UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

OSVALDO RUBIO,

                    Petitioner,

vs.                                                    Case No. 8:04-CV-248-T-27MSS
                                                       Crim. Case No. 8:00-CR-196-T-27MSS

UNITED STATES OF AMERICA,

                    Respondent.
_____/

## ORDER

**BEFORE THE COURT** is Petitioner's Motion to Vacate, Set Aside or Correct Sentencing

Pursuant to 28 U.S.C. § 2255 (Dkt. 1), the Government's Response (Dkt. 5) and Petitioner's Reply

(Dkt. 6). Upon consideration, Petitioner's Motion (Dkt. 1) is DENIED.

In his § 2255 motion, Petitioner asserts three claims of ineffective assistance of counsel:

(1)     Petitioner alleges that counsel advised him to withdraw his guilty plea and as a result
        he lost his acceptance of responsibility reduction;

(2)     Petitioner alleges that counsel was ineffective for failing to "challenge the F.R.Cr.P.
        5(a) violation, contending that since he was indicted on June 13, 2000, he should
        have had an initial appearance before a magistrate judge "immediately after my arrest
        but was not."; and

(3)     Petitioner alleges that counsel should have asked for a mental health evaluation to
        determine his competency during the commission of the offense and should have
        presented an "insanity defense" at trial.

### Procedural History

Petitioner was charged in two counts of a three count Indictment with conspiracy to possess

with intent to distribute and possession with intent to distribute approximately 1,000 grams of

-1-

cocaine. Originally, Petitioner pleaded guilty pursuant to a written plea agreement. (Dkts. 52, 64).[1]

At sentencing on May 7, 2001, Petitioner, through counsel, orally moved to withdraw his guilty plea after learning that he could be subject to career offender status under the guidelines, which had not been anticipated by his attorney at the time Petitioner pleaded guilty. Petitioner himself addressed the Court, confirming his desire to withdraw his plea (Dkt. 90, p.11). The Court reserved ruling, directing counsel to file a written motion and re-scheduling the hearing for May 17, 2001.

Petitioner filed a Motion to Withdraw Plea, contending that he had not been informed at the time of his guilty plea that he would be sentenced as a career offender (Dkt. 81). The Court conducted a hearing on the motion on May 17, 2001 (Dkt. 91). The Court explained that there were potentially adverse consequences if Petitioner withdrew his guilty plea, including but not limited to the risk that he would lose the adjustment for acceptance of responsibility (Dkt. 91, p. 9). Counsel confirmed having discussed this with Petitioner. *Id.* The prosecutor likewise summarized some of the adverse consequences from his perspective, pointing out that the evidence was "overwhelming" as the entire transaction had been captured on video (Dkt. 91, p. 17-18).

The Court addressed Petitioner directly, explaining that he would be required to testify to confirm his desire to withdraw his plea, "so that there's no question that this is your decision and that you know that there are potential consequences that may make it worse for you." (Dkt. 91, p.20). The Court offered Petitioner more time to confer with his attorney, which he declined. (Dkt. 91, p.21).

---

[1] When Petitioner equivocated on whether he knowingly possessed cocaine during the initial Rule 11 plea colloquy on January 25, 2001, the Magistrate Judge adjourned the hearing to afford Petitioner and his attorney an opportunity to confer and, as his attorney requested, to review the video of the drug transaction. (Dkt. 83, p. 36-37). On January 29, 2001, after the parties agreed to certain amendments to the facts in the plea agreement, Petitioner pleaded guilty without equivocation (Dkt. 80, p.20- 21).

Petitioner confirmed that it was his desire to withdraw his plea. He also confirmed his understanding of the potential adverse consequences of withdrawing his plea which had been discussed, at which time his attorney again referred to the "acceptance of responsibility issue." (Dkt. 91, p.21-22).

After being sworn, Petitioner testified that he understood everything that had been discussed, (Dkt. 91. P. 23). The Court adjourned to allow Petitioner to confer with his attorney. Id. When court resumed, Petitioner's attorney indicated to the Court that Petitioner's decision to withdraw his plea was "not consistent with what counsel would think", a "kamikaze type thing" (Dkt. 91, p.26). Petitioner maintained his desire to withdraw his guilty plea, even after the Court again advised him that the consequences of that decision would result in a sentence "as severe as what is now proposed in the Presentence Report, but may very well be more severe than that if you're convicted of course". (Dkt. 91, p. 27-28). Petitioner's Motion to Withdraw Plea was granted and ultimately, Petitioner was convicted after jury trial on both counts charged in the Indictment. (Dkt. 106)

At sentencing, the Government successfully argued for a two level upward departure for obstruction of justice. Evidence was presented that Petitioner had assaulted his co-defendant in the jail yard after the co-defendant testified against Petitioner at trial. Petitioner was sentenced as a career offender without an adjustment for acceptance of responsibility to 327 months imprisonment, to be followed by 4 years of supervised release. (Dkts. 119, 120). Petitioner's conviction and sentence were affirmed. *United States v. Rubio*, 317 F.3d 1240 (11th Cir. 2003) (See Dkt. 138).

## Discussion

In order to demonstrate ineffective assistance of counsel, Petitioner must meet the test established by *Strickland v. Washington*, 466 U.S. 668 (1984). In *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), the Eleventh Circuit summarized the law governing ineffective assistance of

counsel claims:

> The law regarding ineffective assistance of counsel claims is well settled and well
> documented. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court
> set forth a two-part test for analyzing ineffective assistance of counsel claims.
> According to *Strickland*, first, the defendant must show that counsel's performance
> was deficient. This requires showing that counsel made errors so serious that counsel
> was not functioning as the "counsel" guaranteed the defendant by the Sixth
> Amendment. Second, the defendant must show that the deficient performance
> prejudiced the defense. This requires showing that counsel's errors were so serious
> as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*,
> 466 U.S. at 687.

In assessing a lawyer's performance, "[c]ourts must indulge the strong presumption that

counsel's performance was reasonable and that counsel made all significant decisions in the exercise

of reasonable professional judgment." *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir.

2000) (en banc) *cert. denied*, 531 U.S. 1204 (2001). "Our role in reviewing an ineffective assistance

claim is not to 'grade' a lawyer's performance; instead, we determine only whether a lawyer's

performance was within 'the wide range of professionally competent assistance.'" *See Strickland*,

104 S.Ct. at 2066. "The inquiry into whether a lawyer has provided effective assistance is an

objective one: a petitioner must establish that no objectively competent lawyer would have taken the

action that his lawyer did take." *See Chandler*, 218 F.3d at 1315.

Additionally, in establishing the prejudice prong of the two-part test, Petitioner must "show

that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." *Strickland*, 466 U.S. at 694. The inquiry is "whether

counsel's conduct so undermined the proper functioning of the adversarial process that the trial

cannot be relied on as having produced a just result." *Id.* at 686. The proceeding must have been

rendered unfair and the results unreliable. *Lockhart v. Fretwell*, 506 U.S. 364 (1993); *White v.*

*Singletary*, 972 F.2d 1218, 1220 (11ᵗʰ Cir. 1992); *Atkins v. Singletary*, 965 F.2d 952, 958-59 (11th Cir. 1992), *cert. denied*, 515 U.S. 1165 (1995).

**Claim One**

*COUNSEL ADVISED PETITIONER TO WITHDRAW GUILTY PLEA TO PRESERVE APPELLATE RIGHT TO CHALLENGE CAREER OFFENDER ENHANCEMENT*

After pleading guilty to one count of the Indictment, Petitioner learned that he would be subject to a possible career offender status based on previous convictions. Petitioner correctly contends that because he proceeded to trial, he did not receive an adjustment for acceptance of responsibility and therefore received a higher sentence than he would have if he had not withdrawn his guilty plea.[2] This adverse consequence of withdrawing his guilty plea was expressly discussed by the Court with Petitioner during the May 17, 2001 hearing on Petitioner's Motion to Withdraw Plea. Petitioner confirmed under oath his understanding of the potential adverse consequences of withdrawing his plea. Petitioner's contention that his attorney was ineffective in advising him to withdraw his guilty plea is belied by the transcript of the hearing on Petitioner's motion to withdraw his plea. It is patently obvious that Petitioner himself insisted on proceeding to trial, and that this was contrary to the advice of his attorney, who expressed misgivings about that decision, characterizing it as "a Kamikaze type thing." After recessing the hearing for more than an hour to allow Defendant additional time to discuss the motion to withdraw his guilty plea with counsel, the following exchange occurred:

> Mr. Hermida:   Your Honor, pursuant to the Court's instruction I sat with Mr. Rubio till about 12:40. We went over the details. What I had put in my motion exactly, the consequences, pretty much what you repeated. Some of the positive things,

---

[2] On appeal, the Eleventh Circuit affirmed the district court's denial of acceptance of responsibility. *United States v. Rubio*, 317 F.3d 1240 (11th Cir. 2003) (Dkt. 138).

-5-

some of the negative things, you know. An he's not even, you know -- went as far as telling him that, you know, well, we'll get into that afterwards. About the attorney, you know, whether I can continue representing him. But anyway, which is something that's been questioned before. But I just asked him again, I asked him before he wants to proceed as he had previously had done, Judge. Obviously it's not -- and that's where I get put in the position because obviously *it's not consistent with what counsel would think, you know, would be appropriate in light of what, you know, based on my experience and what I know about, you know, the facts. And-- but, you know, and so really it's a Kamikaze type thing.* (emphasis added)

The Court:    Does he want to go forward on the motion?

Mr. Hermida:  Yes. He wants to go forward, Judge. He has his own reasons, and all I did is explain to him, covered his rights and showed him what the motion was about, you know, all those things.

*      *      *

The Court:    . . . Mr. Rubio, I intend at this time, you were placed under oath earlier and you are still under oath, to make further inquiry. Have you now had an opportunity to confer with Mr. Hermida concerning the Motion to Withdraw your guilty plea?

Mr. Rubio:    Yes.

The Court:    Is it your desire to withdraw your plea of guilty and to go to trial?

Mr. Rubio:    Yes.

The Court:    Do you understand that the consequences of that may very well result in a conviction and a sentence which would be at least as severe as what is now proposed in the Presentence Report, but may very well be more severe than that if you're convicted, of course?

Mr. Rubio:    Do I have to give an answer?

The Court:    Yes sir. It's your motion. I'm not going to grant it unless I'm convinced you understand the consequences of it.

Mr. Rubio:    I want to go to trial.

It is apparent from this exchange that Petitioner insisted on withdrawing his plea, notwithstanding his attorney's misgivings about the likely consequences of that decision. Even assuming, *arguendo,* that counsel did advise Petitioner to withdraw his guilty plea, that advice did not amount to ineffective assistance of counsel, as the record reflects that Petitioner himself made the decision to withdraw his guilty plea. An attorney's responsibility is to advise his client but the ultimate decision of whether or not to plead guilty lies with the defendant. "It is important to remember that while defense counsel serves as an advocate for the client, it is the client who is the master of his or her own defense." *U.S. v. Teague*, 953 F.2d 1525 (11th Cir. 1992), *citing Mulligan v. Kemp*, 771 F.2d 1436 (11th Cir. 1985), *cert. denied,* 480 U.S. 911 (1987). "[T]he accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." *Jones v. Barnes,* 463 U.S. 745, 751 (1983), *citing Wainwright v. Sykes*, 433 U.S. 72, 93, n. 1 (1977) (BURGER, C.J., concurring); ABA Standards for Criminal Justice 4-5.2, 21-2.2 (2d ed. 1980).

Here, Petitioner confirmed under oath that the decision to withdraw his plea was his decision. The record establishes, therefore, contrary to Petitioner's contention, that he made the decision to withdraw his guilty plea, that counsel had misgivings about that decision but that Petitioner insisted on it. He cannot now shift the consequences of that decision onto counsel in the guise of an ineffective assistance claim. Given the colloquy engaged in by the district court, Petitioner's contention is frivolous.

That Petitioner was ultimately convicted by a jury and received a longer sentence than he may have faced if he had not withdrawn his guilty plea does not reflect in any way on counsel's

performance.[3]  "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence . . . ." *Strickland v. Washington*, supra at 689.  A lawyer is presumed to be competent to assist a defendant and the burden is on the accused to demonstrate that the lawyer has rendered less than effective assistance of counsel.  *United States v. Cronic*, 466 U.S. 648, 658 (1984).  Petitioner must show that counsel's performance fell below an objective standard of reasonable professional assistance and that Petitioner was prejudiced by the deficient performance. *Strickland v. Washington*, supra.  Where, as here, Petitioner is unable to establish either prong of the *Strickland* analysis, his claim must be dismissed.  *See Coulter v. Herring*, 60 F.3d 1499, 1504 (11th Cir. 1995).

## Claim Two

### *FAILURE TO CHALLENGE ALLEGED  F.R.Cr.P. 5(a) VIOLATION*

Defendant was arrested on a federal warrant on October 11, 2000. (See executed Arrest Warrant, Dkt. 35).  Petitioner was brought to the Courthouse for an initial appearance before the Magistrate Judge on the same day.[4]  (Dkt. 27).  Petitioner was ill, however, so the Magistrate Judge conducted Petitioner's arraignment two days later on October 13, 2000.

Rule 5(a)(1)(A), Fed. R. Crim. P. Provides:

> A person making an arrest within the United States must take the defendant ***without unnecessary delay*** before a magistrate judge . . . unless a statute provides otherwise.

Petitioner was brought before the Magistrate Judge the same day he was arrested. Even if

---

[3]  Further, counsel could not have anticipated that Petitioner would assault his co-defendant prior to sentencing, leading the Government to file a motion for upward departure for obstruction of justice. Petitioner's own actions aggravated his sentence and arguably impaired other possible arguments by his attorney for a downward departure.

[4]  The court's initial appearance minutes reflect that Petitioner was ill and remained in lock up. His attorney asked for a continuance until Petitioner felt better.

Petitioner was not present in the courtroom because of his illness on that day, he appeared before the judge a mere two days later.  Accordingly, Petitioner has not shown a violation of Rule 5(a)(1)(A), Fed. R. Crim. P.  His attorney was not, therefore, ineffective in failing to challenge a violation which did not occur.  *See Chandler v. Moore,* 240 F.3d 907, 917-18 (2001) (counsel not ineffective for failing to raise a non-meritorious issue), citing *United States v. Nyhuis,* 211 F.3d 1340, 1344 (11th Cir. 2000).  Even, assuming *arguendo* there had been some violation, Petitioner has the burden of establishing how he was prejudiced by his attorney's failure to "challenge" the alleged violation.  *Strickland v. Washington,* supra.  Petitioner's conclusory statement that he was indicted "more than two months after his arrest" and thereby "Rule 5(a) was violated" does not meet that burden.[5]

### Claim Three

#### *FAILURE TO CONDUCT INVESTIGATION INTO PETITIONER'S COMPETENCY AT TIME OF OFFENSE AND FAILURE TO PRESENT "INSANITY DEFENSE"*

Petitioner's contention that counsel was ineffective in failing to investigate Petitioner's competency at the time of the offense and for failing to present an insanity defense is without merit. While the Presentence Report indicated that Petitioner has a history of mental health evaluations and treatment associated with his heavy drinking, it also reflected a history of court ordered evaluations in which Petitioner had been found competent. (PSR at ¶¶ 64, 65, 66).  Moreover, when Petitioner originally pleaded guilty, the Magistrate Judge conducted a thorough Rule 11 plea colloquy, including an exchange with Petitioner and counsel concerning Petitioner's mental health history, his memory problems and whether counsel had any difficulties communicating with Petitioner.

---

[5]  The Court agrees with Respondent that it appears Petitioner is confusing his arrest and detention by state authorities, with his federal arrest.  Petitioner was arrested by state authorities on April 4, 2000.  The state charges were dismissed on October 10, 2000. (Dkt. 5, p. 8). Petitioner was arrested on the federal warrant the next day. (Dkt. 35)

(Dkts. 83, p. 5-6).[6]  Petitioner confirmed that he did not think that his memory problem interfered

with his ability to understand the proceedings or the terms of his plea agreement (Dkt. 83, p. 6, 11).

Counsel confirmed that he was aware of Petitioner's past history but that he had no difficulties

communicating with Petitioner and that he had observed nothing indicating mental illness (Dkt. 83,

p. 7).

   Most indicative that there was no evidentiary basis for an insanity defense or for that matter,

anything for counsel to investigate concerning a potential insanity defense, is Petitioner's testimony

during the plea colloquy in which he recalled his participation in the offense in some detail.

Petitioner coherently explained his participation in the offense and why he could not admit to certain

facts in the factual basis supporting his plea (Dkt. 83, p. 23-24, 26. 30-31, 32, 35-36).  He answered

each of the Magistrate Judge's questions appropriately and logically, insisting that although he knew

an illicit transaction was occurring, he was only a courier for the money and was not involved in the

actual purchase of the cocaine. After the hearing was adjourned for four days and Petitioner had

apparently watched the video of the transaction with his attorney, he unequivocally pleaded guilty

and admitted to the essential facts (Dkt. 80, p. 6-7).[7]  The Magistrate Judge determined that

Petitioner was competent to enter a knowing guilty plea. *Id.*

   Simply put, there is nothing in this record to support a defense based on voluntary

intoxication or incompetence at the time of the offense. There was overwhelming evidence of

Petitioner's knowing and wilful participation in the charged conspiracy and possession of cocaine.

---

[6] Mr. Hermida is fluent in Spanish.

[7] As noted, the video depicts Petitioner meeting with a cooperating witness, tasting and snorting the cocaine he was charged with having conspired to possess and returning to the residence in which the transaction was to take place with $23,000 in cash, discussing how the cocaine should be bundled and wrapped. Petitioner was depicted as the "broker or middle man who brought the deal together." (PSR at ¶¶ 13-15).

Petitioner is depicted on the video participating in the transaction, authoritatively discussing the quality of the cocaine, sampling it, discussing its packaging and even bringing $23,000 in cash to the table to consummate the transaction.   Petitioner presents no evidence, other than his bare contentions, that there was any evidentiary basis to support an insanity or competency defense.

Regardless, it is apparent that Petitioner's counsel was aware of Petitioner's memory problems and his mental health issues, as counsel acknowledged during the initial plea colloquy on January 25, 2001 that Petitioner had made him aware of those things (Dkt. 83, p.7). Moreover, Petitioner's attorney had reviewed the Presentence Report prior to the original sentencing hearing during which Petitioner first made the Court aware that he desired to withdraw his guilty plea. (Dkt. 90). The report discussed Petitioner's history of drinking, his memory problems and his mental health issues. Given the video evidence, counsel was under no reasonable obligation to investigate an insanity defense.

Counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Wiggins v. Smith*, 539 U.S. 510 (2003) (quoting *Strickland v. Washington*, 466 U.S. 668, 691 (1984)). However, "no absolute duty exists to investigate particular facts or a certain line of defense." *Chandler v. United States*, 218 F.3d 1305, 1317 (11th Cir. 2000)(*en banc*), *cert. denied*, 531 U.S. 1204 (2001).  Counsel's trial strategy in this regard cannot be second guessed, as "judicial scrutiny of counsel's performance must be highly deferential." *Chandler v. United States,* 218 F.3d at 1314 (11th Cir. 2000)(quoting *Strickland v. Washington,* 466 U.S. 668, 689.

Tactical decisions within the range of reasonable professional competence are not subject to collateral attack, unless a decision was so "patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983). Moreover, where the

-11-

record is incomplete or unclear about counsel's actions, it is presumed that counsel exercised reasonable professional judgment. As counsel's trial strategy is presumptively reasonable, the determination is not "that the particular defense lawyer in reality focused on and, then, deliberately decided to do or not do a specific act." Rather, the presumption is "that what the particular defense lawyer did at trial . . . were acts that some reasonable lawyer might do." *Id.* at 1314-15. Here, Petitioner has not and cannot establish that counsel's representation, from an objective perspective, was so deficient that "no competent counsel would have taken the action that his counsel did." *Id.* at 1315. Given what counsel knew about Petitioner's mental health history and the facts of this case, it was reasonable for him not to conduct any investigation into Petitioner's mental health as it relates to a potential insanity defense.

Accordingly, it is

**ORDERED AND ADJUDGED** that Petitioner's Motion to Vacate, Set Aside or Correct Sentencing Pursuant to 28 U.S.C. § 2255 (Dkt. 1) is DENIED. The Clerk is directed to enter judgment against Petitioner and close this case.

**DONE AND ORDERED** in chambers this 18th day of July, 2006.

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to: Petitioner, *pro se*
Counsel of Record